Greenberg v. Phila. R. T. Co., Appellant.

Argued November 14, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Harpur M. Tobin,* for appellant.

*Herman Eisenberg,* and with him *Bernard Dallen,* for appellee.

Opinion by Cunningham, J., February 27, 1931:

On the forenoon of December 21, 1928, Henry Greenberg, plaintiff below and appellee herein, was driving his Chevrolet coupe east on Mt. Vernon Street, Philadelphia; at the same time a trolley car of the Philadelphia Rapid Transit Co., in charge of its employes, was proceeding north on 11th Street. A collision occurred at the center of the intersection, resulting in slight personal injuries to plaintiff and damage to his automobile. The trial of his action before a jury in the municipal court resulted in a verdict in his favor for $350. Defendant's motions for a new trial and

judgment n. o. v. were denied and it now appeals from the judgment on the verdict.

Plaintiff's version of the accident reads: ''I was going to Jersey on an examination and was driving east on Mt. Vernon Street and reached 11th Street when, before I reached the intersection I stopped and looked to see whether any traffic was coming and then proceeded slowly across, and had almost crossed the tracks when the trolley bumped my rear wheel, threw me a few feet and turned me around completely on the side. ...... Q. Where were you when you first saw the trolley? A. I was going east on Mt. Vernon and just a few feet before I reached the curb, before I reached the intersection. Q. The house line? A. Yes. Q. How far was the trolley away when you saw it at that time, when you reached the house line? A. I should judge around 150 feet. Q. What did you do then? A. When I saw the road was clear I proceeded slowly to cross the tracks. Q. What happened before you came on the tracks? A. Before I came on the tracks, I looked to see again whether the trolley had speeded up any, to make sure he was going the same rate of speed, so I proceeded across slowly. Q. How far was the trolley car from the intersection when you proceeded to cross? A. I guess about 50 feet nearer than it was before. Q. A distance of about 100 feet? A. I suppose so. Q. Where were you hit? A. On the rear wheel, on the hub, the last rear wheel. ...... Q. At what rate of speed were you proceeding on Mt. Vernon Street when you were crossing? A. After I started across? Q. Yes. A. I judge around ten miles an hour; very slow. Q. How fast was the trolley car going? A. When I saw it, it must have been going, I guess probably around 30 miles an hour.''

If this testimony was true, and the jury evidently believed it was, they could reasonably find from it that the proximate cause of the injuries was the negli-

gence of defendant's motorman in approaching the crossing without having his car under proper control, and that plaintiff had made out a case free from contributory negligence on his part. The motorman gave an entirely different version of the accident. He testified: "Well, when I approached Mt. Vernon Street I sounded the gong and stopped the car when I saw this automobile coming over Mt. Vernon Street —I had the car stopped dead and this automobile struck the front bumper of the trolley car and he continued down the street on two wheels this way (illustrating) and struck the curb near the other side and upset. Q. Where did you stop your car? A. Right about ten feet the other side of the corner of Mt. Vernon. ...... Q. How far from the intersection were you? A. Why, about ten feet the other side of the house line; I wasn't in the middle of the street yet; I was not quite in the middle of the street, Mt. Vernon Street. Q. Why did you stop? ...... A. I saw this automobile coming at a rapid rate of speed." He was corroborated by the conductor and in several particulars by a passenger on the trolley car.

The testimony of plaintiff and the motorman was irreconcilable and raised a sharp issue of fact which was submitted to the jury in an adequate charge of which no complaint is made except that defendant's point for binding instructions was refused. That issue of fact was the only issue in the case. We are now asked by this appeal to do something not within our power or inclination—weigh the evidence, pass upon the credibility of the witnesses, conclude that plaintiff's testimony was "manufactured to suit the occasion" and that the motorman and conductor gave the true version of the accident; in other words, appellant urges us to usurp the functions of the jury and reverse its verdict. Mathematical calculations, based upon pure assumptions as to the length of different makes of automobiles, the width of tracks and

the like are submitted in support of appellant's argument that we should reject appellee's testimony. We do not have judicial knowledge of such matter; moreover, as appears from the testimony quoted, the witnesses in this case used the expressions, "I guess probably......should judge...... suppose ...... about," etc. The calculations here submitted fall far short of the "infallible mathematical tests" referred to in the cases cited by appellant; nor were there any "undisputed physical facts" demonstrating the falsity of appellee's testimony.

A careful examination of the record fails to disclose any justification for appellant's attempt to convict the trial court of error in dismissing its motions, and the time we have been obliged to devote to hearing argument and disposing of the case could have been better employed.

Judgment affirmed.